IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-03272-SKC

N.T.B.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## OPINION & ORDER

This action is before the Court under Title XVI of the Social Security Act for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff N.T.B.'s[1] application for supplemental security insurance benefits (SSI). The Court has analyzed the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary. Because the ALJ applied the correct legal standards and substantial evidence in the record supports her findings and the Final Decision, the Court AFFIRMS the Final Decision.

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

1

## BACKGROUND

This action arises from Plaintiff's application for SSI under the Social Security Act, filed on December 30, 2021, claiming he became disabled beginning January 21, 2008. The application was denied initially on April 28, 2022, and upon reconsideration on July 25, 2022. Plaintiff, at his request, appeared and testified at an online video hearing on August 10, 2023, before Administrative Law Judge Rosanne M. Dummer (ALJ). The ALJ held a supplemental hearing by telephone on November 20, 2023. Attorney Bradley L. Johnson represented Plaintiff at both hearings.

The ALJ issued her written Decision on November 24, 2023. AR: 25-45.[2] She determined Plaintiff had not been under a disability since December 30, 2021, the date of Plaintiff's application. Plaintiff then requested review by the Appeals Council, which denied his request, and in doing so, the ALJ's Decision became the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993). Plaintiff then timely filed this action. The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## SSI FRAMEWORK

A person is disabled under the Social Security Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any

---

[2] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 9.

other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-CV-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 97234, at \*2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1)[3] and a duration requirement are deemed disabling at Step Three with no need to proceed in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in Steps One through Four. The Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Here, the ALJ's Decision tracks the five-step process. At Step One, she found Plaintiff had not engaged in substantial gainful activity (SGA) since December 30,

---

[3] Throughout, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (the regulations for disability insurance benefits), identical and parallel regulations are found in Part 416 of that same title regarding SSI benefits. This Order refers to parts 404 and 416 interchangeably.

2021, the protective filing date of the application. AR: 28. At Step Two, she found Plaintiff has the following severe impairments: reported circadian rhythm sleep disorder, depressive disorder, avoidant personality disorder, and bipolar disorder. *Id*. At Step Three, she found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 28-29. She then found Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b). The claimant could lift/carry twenty pounds occasionally and ten pounds frequently; sit eight of eight hours, four hours at a time; and stand/walk eight of eight hours, two hours at a time. He should not climb ladders/scaffolds, work at unprotected heights, or with dangerous moving machinery; he should not operate a motor vehicle. The claimant should not operate foot controls. He could frequently reach, handle, push, pull, handle [*sic*], and finger. The claimant could occasionally climb ramps/stairs and balance; he could frequently stoop, kneel, crouch, and crawl. The claimant could frequently work in humidity/wetness; he could occasionally work in pulmonary irritants (e.g., fumes, odors, dust, gases, and poor ventilation), extremes of heat/cold, and vibrations. He could work in loud (heavy traffic) noise (i.e., Ex. B18F). Secondary to mental impairment(s), the claimant could understand, remember, and carry out instructions for a range of routine repetitive tasks. He could sustain attention and concentration for two-hour segments of time in an eight-hour day. The claimant could interact with coworkers and supervisors for work related, task-oriented contact; he could occasionally interact with the public for brief and superficial contact. The claimant could adapt to changes in the work setting for a range of routine, repetitive tasks. He should avoid work that has fast pace, high production goal work (i.e., conveyor belt, assembly line work).

*Id.* at 30-43.

At Step Four, the ALJ determined Plaintiff has no past relevant work. *Id*. at 43. And at Step Five, she found there are other jobs in significant numbers in the

national economy that Plaintiff can perform, such as merchandise marker, mailroom clerk, and routing clerk. *Id*. at 43-44. Accordingly, the ALJ determined Plaintiff was not under a disability during the relevant period. *Id*.

## STANDARD OF REVIEW

> In reviewing the Commissioner's Final Decision, the Court's
>
> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotations and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Yet "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff raises a single issue, which is whether "[t]he ALJ's RFC determination is the product of legal error and is unsupported by substantial evidence because she improperly evaluated Dr. [*sic*] Somlyay's medical opinion."[4] Dkt. 10, p.4. DNP Somlyay treated Plaintiff beginning in October 2011 when he presented for a psychiatric examination. AR: 31. During that time, she assessed him with hypersomnia and major depressive disorder. *Id.* at 32. She continued treating him every three months or monthly and provided two additional assessments, one in February and one in May 2022. *Id.*at 40. During this time, she assessed Plaintiff with avoidant personality disorder, bipolar II, and circadian rhythm sleep disorder. *Id.* She

---

[4] Plaintiff and the ALJ loosely use the honorific "Dr." when referring to Somlyay. According to the record, however, Somlyay is not a medical doctor, but her educational bona fides are in nursing as a DNP (Doctor of Nursing Practice), PMHNP (Psychiatric-Mental Health Nurse Practitioner), and CPNP (Certified Pediatric Nurse Practitioner). Like Defendant, the Court uses "DNP Somlyay" for clarity and accuracy.

also opined Plaintiff had marked and extreme limitations in his mental ability to work. *Id.* Her treatment ended in May 2022. *Id.* at 31-32.

Plaintiff contends the ALJ committed legal error in failing to provide proper supportability and consistency analyses for her evaluation of DNP Somlyay's medical opinion as required by 20 C.F.R. § 416.920c(b)(2) and argues she "played doctor" by opining on required treatment. Dkt. 10 at p.4. The Commissioner responds that "the ALJ evaluated all opinions and prior administrative medical findings consistent with these governing regulations, explained how persuasive she found them and articulated her consideration of the supportability and consistency factors." Dkt. 11 at 8. The Court agrees with the Commissioner.

### 1.  Supportability and Consistency of DNP Somlyay's Opinions

An ALJ considers medical opinions based on (1) supportability, (2) consistency, (3) the relationship between a medical professional and claimant, (4) the medical professional's specialization, and (5) other factors. 20 C.F.R. § 416.920c (c)(1)-(5) (the Regulation). Supportability and consistency are the most important factors when determining the persuasiveness of a medical source's opinions or prior administrative medical findings. *Id.* at (b)(2). "Supportability" is bolstered by "objective medical evidence and supporting medical explanations presented by a medical source…" *Id.* at (c)(1). A source's "consistency" is measured by its harmony with "the evidence from other medical sources and nonmedical sources in the claim…" *Id.* at (c)(2). When a medical source provides multiple opinions or findings, it is sufficient for the ALJ to

"articulate how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* at (b)(1).

The ALJ must also "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* at (b)(2). But the Regulations do not require any particular level of depth by which the ALJ must discuss the supportability and consistency factors. *M.L. v. O'Malley*, No. 1:23-cv-02315-NYW, 2024 WL 3792378, *4 (D. Colo. Aug. 13, 2024) (quoting *Harp v. Kijakazi*, No. 1:21-0275-KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022)). At a minimum, the ALJ must provide an explanation that allows the reviewing court to follow their reasoning and shows how they considered these factors for each medical source opinion. *Id.*

The ALJ provided enough explanation allowing the Court to easily track her reasoning and consideration of consistency and supportability. First, the ALJ declared that DNP Somlyay's February and May 2022 assessments "are not persuasive as the limitations are inconsistent with the overall record evidence and [DNP] Somlyay's own progress reports." AR: 40. Second, she supports that finding by discussing and citing record evidence of those inconsistencies. *Id.* For example, she cites that Plaintiff had normal mental health findings in October 2011; April 2014, October 2015, July 2016, May 2017; June and August 2018; January and December

9

2020; March, October, and December 2021; and February and May 2022. *Id.* Third, the ALJ made the logical observation that if Plaintiff suffered marked and extreme limitations as noted by DNP Somlyay, then the conservative outpatient treatment he received (with medication(s)) was inconsistent with any claimed higher impairment. *Id.* ("Were the claimant to have marked and extreme limitations, would suggest that more than conservative about once a month, out patient treatment may be required. However, the claimant was only recommended for counseling therapy and [DNP] Somlyay prescribed medications."). Fourth, the ALJ further observed that after Plaintiff ceased treating with DNP Somlyay in May 2022, "the claimant discontinued psychotherapy a month later stating he had 'no significant mental health problems[.]'" *Id.* And when Plaintiff re-engaged with mental health in November 2022 and July 2023, "[m]ental status findings other than some anxiety was normal." *Id.* This analysis all led the ALJ to conclude DNP Somlyay's assessments "appear to be overly sympathetic and are inconsistent with the overall record." *Id.*

These findings sufficiently demonstrate the ALJ's consideration of the supportability and consistency of DNP Somlyay's opinions and the lack of error by the ALJ. The ALJ points out that objective medical evidence (such as the numerous normal mental health findings over numerous months) did not support DNP Somlyay's more extreme assessments; neither were her assessments consistent with her own progress reports, course of treatment, or the medical assessments from other providers after May 2022.

Substantial evidence in the record supports the ALJ's findings and treatment of DNP Somlyay's opinions. The record shows a total of around 23 sessions Plaintiff had with DNP Somlyay over almost 11 years. AR: 468-80, 490-525, 535-65, 608-52. Among the ALJ's thorough analysis of the record, the ALJ points to records from 15 sessions (roughly two-thirds) with DNP Somlyay in which she made findings of normal mental health. AR: 40. Six out of the eight sessions within the year before DNP Somlyay's assessments included normal mental health findings. AR: 608-52. The remaining two session notes contained primarily positive findings by DNP Somlyay, with the most problematic notes mentioning poor insight and judgment, and mild signs of depression. AR: 612, 645. But the latter does not diminish the substantial record evidence supporting the Final Decision. *See, e.g., Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (the reviewing court may not reweigh the evidence). The Court finds substantial evidence in the record supports the ALJ's supportability and consistency findings regarding DNP Somlyay's opinions and the Final Decision.

### 2. Whether DNP Somlyay "Played Doctor"

Plaintiff also argues DNP Somlyay "played doctor" "by opining what type of treatment Plaintiff's mental health impairments would require." Dkt. 20, ECF p.11. Plaintiff takes issue with the ALJ's statement that "[w]ere the claimant to have marked and extreme limitations, [it] would suggest that more than conservative about once a month, outpatient treatment may be required. However, the claimant

11

was only recommended for counseling therapy and Dr. [*sic*] Somlyay prescribed medications." *Id.*

The ALJ did not play doctor here. She instead reasonably determined there was a contradiction between the marked and extreme limitations DNP Somlyay opined versus the fact of the objectively conservative nature of the treatment Plaintiff received. And the ALJ noted this dichotomy as one point demonstrating the lack of consistency or supportability of DNP Somlyay's opinions. To be sure, the ALJ further supported this conclusion by citing record evidence concerning DNP Somlyay's numerous "normal" mental health findings over the course of Plaintiff's treatment from October 2011 through May 2022. AR: 40. And she went further still citing record evidence after May 2022 in which Plaintiff reported he had "no significant mental health problems" and treatment records thereafter indicating he had normal mental health findings. *Id.*

This analysis by the ALJ differs significantly from "playing doctor" by substituting her lay opinion for that of medical professionals. *Cf. McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[T]he ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error."); *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (ALJ erred because his rejection of a medical source opinion was not based on objective medical evidence but solely on the ALJ's "amorphous impressions, gleaned from the record" and his evaluation of the claimant's credibility). It is instead the drawing of

12

reasonable inferences from the record that is the ALJ's function as the factfinder. *T.B. v. Bisignano*, No. 5:25-CV-00063-GFVT, 2025 WL 3657202, at \*3 (E.D. Ky. Dec. 17, 2025) ("[T]his is exactly the role of the ALJ – examining conflicting evidence, weighing its probative value, and reaching a conclusion."); *see also Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 667 (8th Cir. 2003) ("[T]he ALJ considered all of the medical evidence . . . weighed this evidence in accordance with the applicable standards, and attempted to resolve the various conflicts and inconsistencies in the record. This is precisely what an ALJ is instructed to do.").

There are no errors here. The ALJ properly analyzed the medical evidence in her determination of the weight to afford DNP Somlyay's opinions.

\*      \*      \*

For the reasons shared above, the Court is satisfied the ALJ considered all relevant facts, applied the correct legal standards, and the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled under Title XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's Final Decision is AFFIRMED and this civil action is DISMISSED, with each party paying their own fees and costs.

DATED:   June 26, 2026

BY THE COURT:

S. Kato Crews
United States District Judge

14